E.L.S. BUDD, Joined by her husband, R. D. BUDD, and R. D. BUDD, individually, v. J. Y. GOOCH CO., INC., a Florida Corporation, and JOHN A. BOUVIER, JR.

27 So. (2nd) 72                                           June Term, 1946
July 12, 1946                                                  Division B
Rehearing denied July 27, 1946

Robert C. Lane and Alfred E. Sapp, for appellants.

John A. Bouvier, Jr., and C. W. Peters, for appellees.

CHAPMAN, C. J.:

On October 27, 1945, plaintiffs below, appellants here, filed their second amended declaration in two counts, in the Circuit Court of Dade County, Florida, against J. Y. Gooch Co., Inc., and John A. Bouvier, Jr. The first count was in the name of E. L. S. Budd, joined by her husband, R. D. Budd, and R. D. Budd, individually, against J. Y. Gooch Co., Inc., and John A. Bouvier, Jr., in an action for libel. The second count was for libel in the name of R. D. Budd, husband of E. L. S. Budd, against the same defendants. The Court below sustained demurrers directed to each count of the second amended declaration and entered final judgment for defendants below, and plaintiffs appealed.

Counts one and two of the second amended declaration are about the same and pertinent portions thereof are viz:

" . . . that on or about the 15th day of June, A. D. 1942 the defendant, J. Y. Gooch Co., Inc., a corporation under the laws of the State of Florida, was one of the appellees in that certain cause pending in the Supreme Court of the State of Florida in the case of R. D. Budd and E. L. S. Budd, his wife, appellants, v. J. Y. Gooch Co., Inc., a Florida corporation, and Robert L. Weed, Architect, Inc., appellees, and that the said defendant, John A. Bouvier, Jr., was one of the solicitors of record for said defendant, J. Y. Gooch Co., Inc., and that on or about said 15th day of June, A. D. 1942, the said defendants, J. Y. Gooch Co., Inc., by and through its duly authorized officers, employees and attorneys, and John A. Bouvier, Jr., well knowing the premises, but contriving wickedly and maliciously and intending to injure the plaintiff, R. D. Budd, in his good name, fame and credit, and to bring him into contempt and ridicule

before the public, and in particular before the members of the supreme court of the State of Florida, falsely and maliciously wrote and published of, and concerning the plaintiff, R. D. Budd, in a written reply brief filed with the Clerk of the Supreme Court of the State of Florida, on or about June 15, 1942, in said case of R. D. Budd and E. L. S. Budd, his wife, appellants, v. J. Y. Gooch Co., Inc., et al., appellees, therein then and there pending, the impertinent and irrelevant words following, that is to say: 'The woman, now Mrs. Budd, was joined as a party defendant under the name, Mrs. E. L. Schweigbert, when plaintiff (meaning defendant, J. Y. Gooch Co., Inc.) had cause to believe she (meaning plaintiff, E. L. S. Budd) was the common law wife of defendant (meaning plaintiff, R. D. Budd)." They, the said defendants, as aforesaid, meaning thereby to say and to charge and to cause to be published of, and concerning the plaintiff, R. D. Budd, that the plaintiff, E. L. S. Budd, was his concubine, and that he and the plaintiff, E. L. S. Budd, had lived with each other in a state of concubinage, which is the generally accepted meaning of said term 'common law wife' (even though common law marriages are recognized in Florida) and which was the meaning intended by the defendants; whereby, and by means of the committing of which said grievance by the defendants, as aforesaid, the plaintiff, R. D. Budd, has been and is greatly injured . . . "

Our adjudicated cases give to a common law marriage the same dignity and recognition as is accorded to ceremonial marriages and the point of cleavage apparently is the method of expressing consent. At the common law no formal ceremony is essential to a valid marriage and an agreement between parties *per verba de praesenti* to be husband and wife constitute a valid marriage. A ceremonial marriage is effectuated pursuant to a marriage license and marriage ceremony conducted by a minister or authorized civil officer in the presence of witnesses. Catlett v. Chestnut, 107 Fla. 498, 146 So. 241; Orr v. State, 129 Fla. 398, 176 So. 510.

The words published in the reply brief and filed in this Court viz, "The woman, now Mrs. Budd, was joined as a party defendant under the name of Mrs. E. L. Schweigbert, when

plaintiff had cause to believe she was the common law wife of the defendant," and here contended as libelous, are not to be construed or taken in their mildest or most grievous sense, but in that sense in which they may be understood and in which they appear to have been used and according to the ideas which they were adopted to convey to those who hear them, or to whom they are addressed. 38 Am. Jur. 97, par. 84.

We are requested to hold that the words *supra* as employed meant the E. L. S. Budd was the concubine of R. D. Budd and that E. L. S. Budd and R. D. Budd lived with each other in a state of concubinage, being the generally accepted meaning of the term "common law wife." If this method of reasoning or logic is to be observed, then we must recognize a distinction between a common law wife and a wife of a ceremonial marriage, which cannot be done under our decisions. The law of inheritance, and descent and distribution, dower and other property rights apply alike to common law marriages and ceremonial marriages.

In the case of Layne v. The Tribune Co., 108 Fla. 177, 146 So. 234, 86 A.L.R. 466, we held that libel *per se* was the false and unprivileged publication by letters, newspapers, or other form of writing of unfounded statements or charges which expose a person to hatred, distrust, contempt, ridicule or obloquy. The law makes a distinction between false inputations that may be actionable *per se* and those that may be actionable only on allegation and proof of special damages *per quod*. The distinction between the two classes of actions is based on a rule of evidence. Innuendoes in the pleadings are ineffective for the purpose of fixing the character of an alleged libelous publication *per se*. Usually the courts will look to the language of the publication, rather than the innuendoes, in reaching a conclusion as to whether or not the publication is libelous *per se* or actionable only *per quod*. Layne v. The Tribune Co., *supra*.

The rule adopted by this court in determining whether or not words employed by a pleader in a judicial proceeding are privileged and not actionable is set forth in the case of Myers v. Hodges, 53 Fla. 197, 44 So. 357, when we in part said: "In the United States, according to the overwhelming weight of

authority, in order that defamatory words, published by parties, counsel or witnesses in the due course of a judicial procedure may be absolutely privileged, they must be connected with, or relevant or material to the cause in hand or subject of inquiry. If they are published and are so relevant or pertinent to the subject of inquiry, no action will lie therefor, however false or malicious they may in fact be." Taylor v. Alropa Corp., 138 Fla. 137, 189 So. 230; Merriman v. Lewis, 141 Fla. 836, 194 So. 349.

We may assume, arguendo, that the words *supra* published by the defendants were not relevant, material nor pertinent to the subject of inquiry then before the court and therefore were not privileged. Additional thereto, we are now requested by appellants to hold that the term "common law wife" means a woman who was a party to a common law marriage; or one who, having lived with a man in a relation of concubinage; or a "common law wife" is a synonym for a woman having lived in a state of concubinage with a man; and likewise concubine is a woman who lives with a man without being legally married and that the term connotes a "common law wife." From these assumed premises we are asked to sustain the amended second declaration and hold, as a matter of law, that the use of the term "common law wife" is not only defamatory but libelous *per se*.

Our decisions fail to recognize a distinction between a common law marriage and a ceremonial merriage. It would be strained construction to hold, as here contended, that a state of concubinage always existed, in whole or in part, between all individuals prior to contracting or entering into a common law marriage. The use of the word "wife" excludes the theory of concubinage, while the word "marriage" precludes the idea of adultery. We are unwilling to hold that the term "common law wife" means that such a wife is guilty of lewd and lascivious conduct or that her status is an unlawful one. It is our conclusion that the words *supra* as published are not libelous *per se,* nor defamatory, and the judgment entered in the lower court is free from error.

Affirmed.

BROWN, THOMAS and SEBRING, JJ., concur.