67 So.2d 434 (1953)
JOOPANENKO
v.
GAVAGAN.
Supreme Court of Florida. Special Division A.
October 6, 1953.
Gregory G.G. Joopanenko, in pro. per.
Neal D. Evans, Jr., Jacksonville, for appellee.
MATHEWS, Justice.
This is an appeal from a final judgment based on a motion to dismiss a complaint in an action for slander.
According to the allegations of the amended complaint, the plaintiff was a resident of Jacksonville Beach in Duval County, Florida, and was the owner and operator of a duplex apartment in that city. On the 24th of April, 1950 at the city hall of Jacksonville Beach a public meeting was held and there were approximately 1500 people present. The defendant (appellee) in the presence of all these people maliciously spoke of and concerning the plaintiff (appellant) the following false and defamatory words: "Don't let that man speak, I know him and he is a Communist." The amended complaint then charges that the words were meant and intended to be understood and were understood and that they were false and defamatory and spoken with the intent to injure and damage the plaintiff in his good name and reputation and by reason thereof he has been injured in his good name, reputation and business, has suffered great pain and mental anguish and has been held up to ridicule and contempt. The appellee filed a motion to dismiss which was granted by the trial Judge. In the order of dismissal it is stated:
"* * * Slander is distinguishable from libel, and in the view of this *435 Court, before any words spoken of a man can be slanderous per se, as distinguished from per quod, they must impute, in general, (a) criminal offense, or (b) a presently existing venereal or other loathsome and communicable disease, or (c) conduct, characteristics or a condition incompatible with the proper exercise of his lawful business, trade, profession or office. While there may be no doubt that under present conditions it would be libelous to charge a man with being a Communist, yet it also appears that to so charge him does not impute any of the matters set forth above. I find no law which indicates that calling a person a Communist charges such person as having committed a crime; in order to constitute a crime there must be a failure to register or some overt act to overthrow established government, or something done in addition. * * *"
A motion for rehearing was filed which was denied.
It should be noted that the Court below based its order upon the failure of the amended complaint to charge (a) a criminal offense, or (b) a present existing venereal or other loathsome and communicable disease, or (c) conduct, characteristics or a condition imcompatible with the proper exercise of his lawful business, trade, profession or office.
It is unnecessary to pass upon the question of whether or not the offense charged was a criminal offense, or that he has an existing or other loathsome communicable disease, but it certainly charges him with having a loathsome state of mind or loathsome ideas which are communicable. As a matter of fact he alleges in the amended complaint that the words spoken were intended to be understood and were understood and that they held appellant up to ridicule and contempt among his friends, customers and the public in general.
In the case of Sharp v. Bussey, 137 Fla. 96, 187 So. 779, 780, 121 A.L.R. 1148, the case of Briggs v. Brown, 55 Fla. 417, 46 So. 325, was cited with approval, and a portion of the opinion quoted as follows:
"`Where a publication is false and not privileged, and is such that its natural and proximate consequence necessarily causes injury to a person in his personal, social, official or business relations of life, wrong and injury are presumed or implied, and such publication is actionable per se.'"
The case of Sharp v. Bussey, supra, was not a case for libel but was a case for slander and by quoting from the case of Briggs v. Brown, supra, this Court made applicable to a slander case the words hereinabove quoted. The Court then discussed in Sharp v. Bussey, supra, what was common and general knowledge and where the conduct which was such that it would cause a person to be held in contempt and despised by self-respecting citizens would constitute slander per se. The Court then said:
"It is our view that the language alleged to have been used by the defendant of and concerning the plaintiff, if false and not privileged, was such that its natural and proximate consequences necessarily caused injury to the plaintiff in his social, official and business relations of life. * * *"
The case of Sharp v. Bussey, supra, was not decided because the words spoken charged a crime or a loathsome disease, but because the language used was such that its natural and proximate consequences necessarily caused injury to the plaintiff in his social, official and business relations of life.
In the case of Le Moine v. Spicer, 146 Fla. 758, 1 So.2d 730, 733, the Court pointed out the difference between charging a person with the statutory crime of intoxication by the use of intoxicating liquor and such a charge without respect to the criminal feature, and then said:
"He or she who so indulges will become an object of contempt and an outcast *436 from society and the world of business and worthwhile enterprise."
In the case of Commander v. Pedersen, 116 Fla. 148, 156 So. 337, 340, the defendant had called the plaintiff a "crook." There is no crime defined as a crook. This Court said:
"* * * The word `crook' has come to have a very definite meaning amongst the people of all English speaking countries. To charge that one is a `crook' is in effect to charge that such a one is unscrupulous, dishonest, and not worthy of confidence and, therefore, a person deliberately and outside of a privileged communication charges, either orally or in writing, that another is a `crook,' such language is actionable per se, because such words come within the purview of the authorities hereinbefore cited. We have seen that in 17 R.C.L. 263 et seq., it is said, `Words may be actionable in themselves or per se, or they may be actionable only on allegation and proof of special damage or per quod * * *. The noxious quality in both lies in the fact that they are the natural and proximate cause of pecuniary damage to those concerning whom they are maliciously uttered * * *. In the case of words actionable per se their injurious character is a fact of common notoriety established by the general consent of men and the court consequently takes judicial notice of it. They necessarily import damage and, therefore, in such cases general damages need not be pleaded or proved but are conclusively presumed to result and special damages need not be shown to sustain the action.'"
Words spoken which are false and not privileged may be slanderous per se without being used with such particularity that they would constitute a crime in an information or an indictment. To say of a person that he is a murderer, a rapist, a burglar or a thief would not meet the requirements of charging a crime in an information or an indictment, but they may be sufficient to be slanderous per se.
In the case of Loeb v. Geronemus, Fla., 66 So.2d 241, 244, which was a case of slander and not of libel, the Court in an opinion by Mr. Justice Sebring held that the complaint was sufficient to withstand an attack by motion to dismiss and required an answer. In the course of the opinion it was stated:
"As appears from the other allegations of the complaint, however, the defendants at various times falsely stated, orally, that the plaintiff was not a Jew; that he was a disgrace to a Jewish organization; that his conduct was scandalous; that he was guilty of evil conduct, and that he was a man of low moral character. While it is true that these statements were apparently made at a meeting of the religious group involved, and hence may have enjoyed a measure of qualified privilege, the allegations of the complaint are further that after the meeting adjourned, one of the defendants, at the direction of the others, stated to the members of the press, for publication purposes, `the accusations against the plaintiff were so bad they could not be repeated'; while still another defendant made the public statement, `He is a bad actor * * * no respectable person will have anything to do with him * * * somebody told me he had to leave Chicago.'
* * * * * *
"In determining the basic question of whether certain language is defamatory, so as to give rise to an action for slander, the words used `are not to be construed or taken in their mildest or most grievous sense, but in that sense in which they may be understood and in which they appear to have been used and according to the ideas which they were adopted to convey to those who hear them or to whom they are addressed.' Budd v. J.Y. Gooch Co., 157 Fla. 716, 27 So.2d 72, 74. The publication *437 made should be construed as the common mind would understand it. Cooper v. Miami Herald Pub. Co., 159 Fla. 296, 31 So.2d 382; Richard v. Gray, Fla., 62 So.2d 597; Sharp v. Bussey, 137 Fla. 96, 187 So. 779, 121 A.L.R. 1148."
Without deciding the question of whether or not the charge made constituted a crime, the public policy of this State with reference to Communism is clearly established by F.S. Chapter 876, F.S.A.
In the case of State v. Sullivan, Fla., 37 So.2d 907, 908, a rule nisi was issued in a contempt proceeding because the appellant had refused to answer certain questions propounded by the County Solicitor of Dade County. Among the questions propounded were the following:
"Are you a member of the Communist Party?
* * * * * *
"Did you attend the meeting that was held at the Edwards Hotel, Miami Beach, on February 15, 1948, at 8 o'clock * * *?"
A motion was filed to discharge the rule on the ground of self-incrimination, which was denied. Appellant was then adjudged guilty of contempt and sentenced to jail. In a habeas corpus proceeding the prisoner was remanded and appeal was prosecuted from the order of remand. This Court said:
"The petition for the rule nisi shows that the county solicitor was investigating charges of criminal communism as defined by Sections 876.01 to 876.04 inclusive, Florida Statutes 1941, F.S.A., the gist of which condemns advocating, publishing, organizing or becoming a member of an association which teaches the overthrow of Government by force, assassination, sabotage or other forcible resistance of constituted authority or who permits any building, over which he had dominion or control to be used for that purpose."
After citing a number of cases the Court then said:
"So the real point here is whether or not the answers to the inquiries propounded to appellant tended directly or indirectly to incriminate her * * *."
The order remanding the prisoner was reversed.
F.S. Sections 876.05 through 876.10, F.S.A., were enacted in 1949 as Chapter 25046. If there was any doubt about the public policy of this State prior to that time, such doubt was removed by the legislative findings and determinations as set forth in Chapter 25046, some of which are:
"Whereas, there is a world movement under the domination of a foreign power which operates under the name of Communism, but having as its real objective the establishment of totalitarian dictatorship in all parts of the world under the domination and control of its central organization; and
"Whereas, such a dictatorship is characterized by the liquidation of all political parties other that the Communist Party, the abolishment of free speech, free assembly, and freedom of religion, and is the complete antithesis of the American constitutional form of government; and
"Whereas, the methods used by such a police state include treachery, deceit, infiltration into governmental and other institutions, espionage, sabotage, terrorism and other unlawful means; and
"Whereas, the World Communist movement is not a political movement, but is a world-wide conspiracy having sections in each country; and
* * * * * *
"Whereas, it is the finding of the Legislature of the State of Florida that the Communist Party is in fact and in truth not a political party but is rather and instead a union and organization *438 whose members are devoted adherents to the doctrine and belief in the overthrow of the government of the United States and of Florida by force or violence;
"Now Therefore, the better to protect its government, its citizens and its schools from the infiltration of these conspiratorial fanatics whose first allegiance this Legislature finds to be not to the good of this State but rather to its forceful destruction, * * *."
The Act requires all employees of the State of Florida or any of its departments and agencies, subdivisions, counties, cities, school boards and districts of the free public school system of the State or counties or the institutions of higher learning, and all candidates for public office to take an oath "that I am not a member of the Communist Party".
To charge that one is a member of the Communist Party which has as its object the overthrow of the Government of the United States and of Florida by force or violence and the abolishment of free speech, free assembly and freedom of religion, which is the complete antithesis of the American constitutional form of government, and that the methods used by such Communist Party include treachery, deceit, infiltration into governmental and other institutions, espionage, sabotage, and terrorism, necessarily causes injury to the person spoken of in his social, official and business relations of life. Such words hold him up to scorn, contempt and ridicule, causing such person to be shunned by his neighbors, and in effect charges such person with being a traitor to his country and with being a member of an organization with a primary purpose of the destruction by force or violence of the very Government which protects him.
The words spoken of the appellant are to be construed in the sense in which they may be understood and in which they appear to have been used and according to the ideas which they conveyed to those who hear them or to whom they are addressed. Time, place and circumstances are always important and should be considered in determining the effect and meaning of words spoken in a case for slander.
It is difficult for us to conceive of any words or charge which would be more slanderous per se than the words used in this case, at the time and place and under the circumstances set forth in the complaint as amended. The amended complaint is sufficient to require an answer.
The order dismissing the amended complaint should be, and is hereby, reversed, with directions to proceed further in accordance with this opinion.
ROBERTS, C.J., and TERRELL and SEBRING, JJ., concur.