[No. 34650. *En Banc.* June 25, 1959.]

A. F. GREIN, *Respondent*, v. NUGENT LAPOMA et al., *Appellants*.

WILLIAM T. HUGHES, *Respondent*, v. NUGENT LAPOMA et al., *Appellants*.[1]

[1] Reported in 340 P. (2d) 766.

*Bassett, Davies & Roberts,* for appellants.

*Allen, DeGarmo & Leedy,* for respondents.

WEAVER, C. J.—We have for determination on this appeal, from judgments on verdicts in consolidated slander actions, whether it is slanderous *per se* to orally call another a "communist." The statement proved to have been spoken is:

" 'There is a bunch of Communists trying to break up the Union and deprive its members of work. I am not going to mention names, but that old S. O. B. who held and conducted that meeting at Airport Way is nothing but a Communist and I can prove it by the five policemen that were at that meeting. One of those S. O. B. Communists is in the hall and he is sitting right over there. If he had any guts he'd stand up.' "

The trial court instructed that the statement was slanderous *per se.* We agree.

■ The decided cases universally hold that printed publication of a charge that one is a communist is libelous *per se. Joint Anti-Fascist Refugee Committee v. McGrath,* 341 U. S. 123, 95 L. Ed. 817, 71 S. Ct. 624; *Gallagher v. Chavalas,* 48 Cal. App. (2d) 52, 119 P. (2d) 408; *Spanel v. Pegler,* 70 F. Supp. 926; *Washington Times Co. v. Murray,* 299 Fed. 903; *Parmelee v. Hearst Pub. Co.,* 341 Ill. App. 339, 93 N. E. (2d) 512; *Mencher v. Chesley,* 297 N. Y. 94, 75 N. E. (2d) 257; *Burrell v. Moran,* 38 Ohio Ops. 185, 52 Ohio L. Abs. 465, 82 N. E. (2d) 334; *Americans for Democratic Action v. Meade,* 72 Pa. Dist. & Cy. Rep. 306; *Utah State Farm Bureau Federation v. Nat. Farmers Union Service Corp.,* 198 F. (2d) 20, 33 A. L. R. (2d) 1186.

We have here, however, only oral defamation. Appellants' argument is that such an oral accusation does not import a criminal offense and is, therefore, not slanderous *per se* but only *per quod.* There are cases so holding. *Gurtler v. Union Parts Mfg. Co.,* 285 App. Div. 643, 140 N. Y. S. (2d) 254, affirmed 1 N. Y. (2d) 5, 132 N. E. (2d) 889; *Pecyk v. Semoncheck* (Ohio App.), 105 N. E. (2d) 61 (1952).

On the other hand, the supreme court of Pennsylvania, in *Solosko v. Paxton*, 4 Pa. Dist. & Cy. Rep. (2d) 240, 119 A. (2d) 230, affirmed 383 Pa. 419, the supreme court of Missouri, in *Lightfoot v. Jennings*, 363 Mo. 878, 254 S. W. (2d) 596, and the supreme court of Florida, in *Joopanenko v. Gavagan* (Fla.), 67 So. (2d) 434 (1953), held that such a statement was slanderous *per se* without the proof of special damage.

It is ordinarily said that spoken words are not actionable *per se* except:

"a. The imputation of a serious crime.
"b. The imputation of certain loathsome diseases.
"c. Imputations affecting the plaintiff in his business, trade, profession or office.
"d. In some jurisdictions the imputation of unchastity to a woman." Prosser on Torts (2d ed.), 584, chapter 19, § 93.

For well over a century, legal scholars have ridiculed the common law distinction between written and spoken defamation. For the history on this, Professors Green, Malone, Pedrick and Rahl in their recent work on Injuries to Relations, list the following:

". . . Plucknett, A Concise History of the Common Law (2d 1936) pages 427-445. Also see Holdsworth's, History of English Law, Vol. VIII, p. 333 et seq.; Van Vetchen Veeder, History and Theory of the Law of Defamation, 3 Col. L. Rev. 546 (1903); 4 Col. L. Rev. 33 (1904); 3 Essays in Anglo American Legal History 459, 461, 467, 468, 471; Nicholas St. John Green, Essays on Tort and Crime, 49 (1933); Fisher, The History of the Law of Libel, 10 L. Q. R. 158 (1894); Comment, The Pre-Thorley v. Kerry Case Law of the Libel Slander Distinction, 23 U. of Chi. L. Rev. 132 (1955)." Green, Injuries to Relations, 334, 347, chapter 3, § 1.

Mr. Samuel Spring in his recent text, Risks and Rights, summarizes the matter in the following passages:

"A hairsplitting distinction still prevails between slander and libel. This technicality defines slander as oral publication of a false statement, i.e. by word of mouth and by means that reach the ear. Libel is defined as false state-

ments in writing or printing, means that reach the eye. This highly artificial distinction is of great importance.

"One who has been slandered (that is, defamed by word of mouth) cannot recover damages, or even have a jury decide if he has been damaged, or estimate the damage, unless he can prove special damages. Special damages are difficult to show. The net result is that in the great majority of defamations by slander no recovery can be had; only four instances are excepted. . . .

"Why does our modern law cling to such a technical distinction between libel and slander? From habit. In the early nineteenth century, Parliament asked the judges of England to advise it whether or not the distinction should be abolished. The judges so advised. They characterized the distinction as outgrown. But Parliament, nevertheless, didn't end the medieval rule, nor have lawmakers in the United States. Those who conduct radio and television stations, of course, are eager to cling to the exemption from liability for defamation which this medieval survival grants them.

"In the fourteenth and fifteenth centuries, the courts of the church, not those of the king, granted relief for all wrongs by defamation. The priest-judges, who administered relief for defamation, favored penance instead of money damages. The limited injuries involved in oral slander, they felt, could best be managed by patching up the personal quarrels involved. In medieval days, however, the written or printed word carried great sanction of authenticity. People believed that anything in print must be true. Print, obviously, had a much wider circulation than oral statements. So the Star Chamber, when it took over control of printed publications in the effort of the state to impose censorship upon thoughts dangerous to the Crown, viewed defamation in print seriously. To prevent dueling and public disorder, where libel was involved, the Star Chamber adopted the rule that if defamation was in print or writing damages would be presumed. It also held that libels of a serious type, since they tended to create duels and breaches of the peace were crimes. It added that in criminal libel truth was no defense, as it was in civil defamation. Thus emerged the adage: 'The greater the truth, the greater the libel.' The modern law still views serious libels of specific limited types as crimes, but generally permits truth as a defense even in criminal libel.

"When the Star Chamber was abolished by the Long

Parliament and Cromwell in 1641, the king's courts took over control of all relief for defamation from the Star Chamber and the canonical courts. But the distinction between slander and libel was preserved. And all efforts to end the distinction thereafter have failed, even in modern law in the United States." Spring, Risks and Rights, 42, 44, chapter 4, §§ 19, 20.

Professor Thomas Atkins Street in 1 Foundations of Legal Liability, 273, 278, 280, chapter 19, declares:

". . . Not all harms, say the English judges, which are incident to the circulation of defamatory matter are a basis of legal wrong. There must be an imputation of crime, or of contamination by loathsome disease, or an imputation hurtful to one in his business, or which tends to disherison, or which is followed by special damage; or the defamation must be in the form of a libel. Nothing could be more illogical than this enumeration; it cannot be called a classification of actionable defamations, for it proceeds upon no principle whatever. It is clear that our law of defamation was atrophied in its first stages and has not yet succeeded in breaking the bonds which stunted its growth. . . .

". . . If the general principle had been accepted from the first that impairment of one's reputation by the dissemination of defamatory speech is a legal wrong, all trouble would have been removed. This is the very principle to which common-law courts have refused to be committed. But it is obvious that a state of stable equilibrium can never be here attained until this truth is fully recognized. It seems probable that before many generations the combined effects of enlightened judicial decision and legislative action will put this branch of law on the correct basis and harmonize it with the law of libel. Otherwise we must admit the final triumph of error."

Professor William Holdsworth, in 8 History of English Law, 301, 335, chapter 5, § 2, declares:

"Since the common law remedy was an action on the case, damage was the gist of the action. And damage was construed in a narrow proprietary sense. As Sir F. Pollock has said, 'the law went wrong from the beginning in making the damage and not the insult the cause of the action.' . . ."

It is thus apparent that the hodgepodge of the law of slander is the result of historical accident for which no

reason can be ascribed. It is time that the matter be righted. There ought not to be any distinction between oral and written defamation. It is entirely a matter of judge-made law, and English judges at that. Judge Bray in *Hellwig v. Mitchell*, 1 (1910) K. B. 609, 613, said:

"This is not a question of principle, but of judge-made law, . . ."

But it is not necessary to rest our affirmance on this ground alone, because to charge a person with being a communist is to impute a crime. We recently had occasion to say in *Nostrand v. Balmer*, 53 Wn. (2d) 460, 335 P. (2d) 10:

"Even prior to the commencement of hostilities in Korea in 1950, numerous judges had recognized the communist party as a part of a world conspiracy having as its prime objective the overthrow of the United States government by force and violence, or whatever means possible, constitutional or otherwise. Since then, Congress, in 1950, enacted legislation designed to control the communist party, and, in 1954, proscribed it. The courts of New Jersey and Pennsylvania take judicial notice of the fact. We can, and do now, hold likewise, because the fact that the communist party is a subversive organization is now a matter of common knowledge."

We approve the decisions of the supreme court of Pennsylvania in *Solosko v. Paxton, supra,* and the supreme court of Missouri in *Lightfoot v. Jennings, supra,* holding that such an oral defamation is slanderous *per se.* We adopt the following passage from the recent decision of the supreme court of Florida in *Joopanenko v. Gavagan, supra*:

"To charge that one is a member of the Communist Party which has as its object the overthrow of the Government of the United States and of Florida by force or violence and the abolishment of free speech, free assembly and freedom of religion, which is the complete antithesis of the American constitutional form of government, and that the methods used by such Communist Party include treachery, deceit, infiltration into governmental and other institutions, espionage, sabotage, and terrorism, necessarily causes injury to the person spoken of in his social, official and business relations of life. Such words hold him up to scorn, contempt,

and ridicule, causing such person to be shunned by his neighbors, and in effect charges such person with being a traitor to his country and with being a member of an organization with a primary purpose of the destruction by force or violence of the very Government which protects him. . . .

"It is difficult for us to conceive of any words or charge which would be more slanderous per se than the words used in this case, at the time and place and under the circumstances set forth in the complaint as amended. The amended complaint is sufficient to require an answer."

Moreover, the legislature of Washington has made membership in a subversive organization a felony. RCW 9.81-.020, 9.81.030.

It is worthy of note that the Florida statute did not make membership in the party a crime, but only required a loyalty oath by public officials. Notwithstanding this, the supreme court of Florida held that to call one a communist was synonymous with an accusation of treason.

■ It is our considered opinion that to orally defame a person by calling him a communist is slanderous *per se* without proof of special damage.

■ Error is assigned upon the exclusion of offered testimony of witnesses in another trial. The proof offered was by the reporter who took such testimony. The ground of the offer was that such testimony was admissible under the business records statute. Appellants now admit, however, that this statute is not controlling, but urge the admissibility of the offered evidence on the ground of the former testimony rule. This cannot be done for the first time on appeal.

Error is assigned upon the refusal of the trial court to instruct as requested by the appellants upon qualified privilege. However, examination convinces us that the instruction given correctly states the rule on qualified privilege.

Appellants assign error upon the misconduct of counsel in his argument to the jury, and argue that the verdicts indicate passion and prejudice. We have examined the claimed error with respect to misconduct of counsel, but find it without merit. The amounts of the verdicts are well

within the range of awards in similar cases, and we find nothing to indicate that they were the result of passion and prejudice.

The judgment is affirmed.

ALL CONCUR.

December 14, 1959. Petition for rehearing denied.

