387 So.2d 436 (1980)
CAPE PUBLICATIONS, INC., Gannett News Service, Inc., Scott Maclay, and Robert Brown, Petitioners,
v.
Hilda BRIDGES, Respondent.
No. 79-1568/NT-89.
District Court of Appeal of Florida, Fifth District.
August 13, 1980.
Rehearing Denied September 25, 1980.
*437 David M. Schraver of Nixon, Hargrave, Devans & Doyle, Palm Beach, for petitioners.
Edward A. Perse of Horton, Perse & Ginsberg, Miami, and Nance, Cacciatore & Sisserson, Melbourne, for respondent.
Sanford L. Bohrer of Paul & Thomson, Miami, and Robert, Miller, Bagget, LaFace, Richard & Wiser, Tallahassee, for amici curiae The Miami Herald Pub. Co. and Florida Soc. of Newspaper Editors.
GLICKSTEIN, HUGH S., Associate Judge.
Respondent, plaintiff below, filed a second amended complaint against petitioners[1] *438 for compensatory and punitive damages arising out of an alleged (a) invasion of privacy, (b) trespass, and (c) intentional infliction of emotional distress. Count I alleged that respondent was abducted at gunpoint by her estranged husband and was transported to an apartment co-leased by respondent and her husband; that she was held against her will, repeatedly beaten and forced to disrobe; that she was later involuntarily and/or forcibly removed in a state of shock, emotional distress, and nudity, save for a mere towel, from the apartment by the police following the suicide of her husband; that the defendants "Maclay" and/or "Brown," took photographs of the respondent in her state of nudity and distress and turned over the photographs to defendants "Cape" and "Gannett"; that "Cape" and/or "Gannett" owned the TODAY newspaper, published the photographs in said newspaper without respondent's knowledge or consent, and provided copies of the photographs to defendants "AP" and "Gannett"; that the two last mentioned defendants distributed the photographs to other subscribing news media services resulting in publication by other newspapers and television without the consent and knowledge of respondent; and that the act of photographing of the respondent by defendant "Maclay" and/or "Brown" in the state of nudity under the circumstances constituted an invasion of her right to her privacy of her physical person.
Count II incorporated by reference most of the foregoing allegations and also averred, inter alia:
The act of taking, publishing and distributing the photographs ... was a deliberate, malicious and concerted act by the Defendants "Maclay," "Brown," "Cape," "Gannett" and "AP" especially calculated to cause severe emotional distress and mental pain and anguish to the Plaintiff, a person of ordinary and reasonable sensibilities such being conduct exceeding all bounds of propriety and reasonable sensibility reasonably foreseen to cause emotional distress and mental pain and anguish and that it would not be tolerated by society and did contribute directly and proximately to the embarrassment and humiliation caused to the Plaintiff and the damages more specifically stated hereinafter."
Count III incorporated most of the allegations contained in Count I and also alleged, inter alia:
In taking the photographs ... the Defendant "Maclay" and/or "Brown" did enter upon the property and appurtenances which is the subject of the aforesaid lease agreement between the Plaintiff and the owners of the said property and did so without the consent of the Plaintiff, or any other tenants, or the owner thereof, or any other person authorized to grant such consent and without the consent or or [sic] authorization of any of the law enforcement agencies at the scene. Such entry upon this property constituted a trespass and aided the Defendants "Maclay" and/or "Brown" to carry out the aforesaid activities and contributed directly and proximately to the damages more specifically stated hereinafter.
On June 8, 1979, the trial court, over petitioners' objection, ordered Scott Maclay to produce the following within twenty days:
1. Any and all photographs, negatives and prints taken by the Defendant, Scott MaClay concerning the incident described in the Complaint.[2]
It also required Maclay to answer twenty-two questions posed to him in his deposition. The same order required Cape Publications and Gannett News Services to produce the following:
1. Any and all photographs, negatives and prints taken by the Defendant, Scott MaClay, concerning the incident described in the Complaint.

*439 2. Any and all news articles, stories, news releases or other items published by the Defendant, Cape Publications, Inc., and Gannett News Services, Inc., concerning the incident described in the Complaint.
3. Any and all copies of the news releases or other information or data provided by Cape Publications, Inc., or Gannett News Services, Inc., to Associated Press.[3]
and:
Any and all notes, memorandum, rough draft, stories and all other materials in the possession of the Defendants, Cape Publications, Inc., and Gannett News Services, Inc. regarding the news story and investigation regarding the incident described in the Complaint.
Any and all photographs, negatives and prints taken by its servants and employees of the Defendants, Cape Publications, Inc., and Gannett News Services, Inc.[4] Any and all photographs, negatives and prints in the possession of the Defendants, Cape Publications, Inc., and Gannett News Services, Inc., regarding the incident described in the Complaint.
Any and all photographs, negatives and prints purchased by the Defendants, Cape Publications, Inc., and Gannett News Services, Inc., involved in the incident described in the Complaint.
The trial court based its order on Herbert v. Lando, 441 U.S. 153, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979), a defamation action. The Supreme Court upheld the district court's order compelling one of the deposed defendants to answer questions which inquired into the editorial process and state of mind of those responsible for the publication of a report involving the plaintiff on the television program, "60 Minutes," and in a subsequent article in Atlantic Monthly.[5]
We concur with the trial court and its reliance upon Herbert, supra, which cited Curtis Publishing Co. v. Butts, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967), and said:
Reliance upon such state-of-mind evidence is by no means a recent development arising from New York Times [376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)] and similar cases. Rather, it is deeply rooted in the common-law rule, predating the First Amendment, that a showing of malice on the part of the defendant permitted plaintiffs to recover punitive or enhanced damages. In Butts, the Court affirmed the substantial award of punitive damages which in Georgia were conditioned upon a showing of "wanton or reckless indifference or culpable negligence" or "ill will, spite, hatred and an intent to injure... ." 388 U.S. 130 at 165-166, [87 S.Ct. 1975, 1997, 18 L.Ed.2d 1094]. Neither Mr. Justice Harlan, id., at 156-162, [87 S.Ct., at 1997, nor Chief Justice Warren, concurring, id., at 165-168, [87 S.Ct., at 1996-1998], raised any question as to the propriety of having the award turn on such a showing or as to the propriety of the underlying evidence, which plainly included direct evidence going to the state of mind of the *440 publisher and its responsible agents. (footnotes omitted). 441 U.S. at 161-163, 99 S.Ct. at 1641-1642.
The Supreme Court added:
Courts have traditionally admitted any direct or indirect evidence relevant to the state of mind of the defendant and necessary to defeat a conditional privilege or enhance damages. The rules are applicable to the press and to other defendants alike, and it is evident that the courts across the country have long been accepting evidence going to the editorial processes of the media without encountering constitutional objections. (footnotes omitted). 441 U.S. at 165, 99 S.Ct. at 1643.
In Florida, punitive damages are defined as:
[D]amages which are given as an enhancement of compensatory damages because of the wanton, reckless, malicious or oppressive character of the acts complained of. Ellis v. Golconda Corp., 352 So.2d 1221, 1225 (Fla. 1st DCA 1977), cert. denied sub nom. Peterson v. McKenzie Tank Lines, Inc., 365 So.2d 714 (Fla. 1978).
Respondent has sought punitive damages in each count of her second amended complaint. We do not perceive any reason to exclude actions for invasion of privacy, trespass or intentional infliction of emotional distress from the above recited principles when the issue of punitive damages is pending before the trial court.[6]
Accordingly, the petition is denied.
LETTS, GAVIN K., and ANSTEAD, HARRY LEE, Associate Judges, concur.
NOTES
[1] Associated Press was also a named defendant.
[2] The order recited that whatever applied to Scott MaClay was also required of Robert Brown.
[3] We note in passing that this paragraph does not limit the discoverable matter articulated therein to information concerning the incident described in the complaint and therefore seems to be overbroad. However, we shall not consider the issue further since petitioners have not raised it.
[4] See note 3, supra.
[5] The objectionable inquiries were:

"1. Lando's conclusions during his research and investigations regarding people or leads to be pursued, or not to be pursued, in connection with the `60 Minutes' segment and the Atlantic Monthly article;
"2. Lando's conclusions about facts imparted by interviewees and his state of mind with respect to the veracity of persons interviewed;
"3. The basis for conclusions where Lando testified that he did reach a conclusion concerning the veracity of persons, information or events;
"4. Conversations between Lando and Wallace about matter to be included or excluded from the broadcast publication; and
"5. Lando's intentions as manifested by his decision to include or exclude certain material." Herbert v. Lando, 568 F.2d 974, 983 (CA3 2 1977).
Herbert v. Lando, 441 U.S. 153, 157 fn.2, 99 S.Ct. 1635, fn.2, 60 L.Ed.2d 115 (1979).
[6] Malice is not an essential element of a cause of action for compensatory damages arising out of trespass, 32 Fla.Jur., Trespass §§ 5, 15; or out of invasion of privacy. Santiesteban v. Goodyear Tire & Rubber Company, 306 F.2d 9, 12 (5th Cir.1962). However, if the action for invasion of privacy arises out of publication of matter which places a claimant in a "false light," it is necessary that there be proof that publication was made with knowledge of its falsity or in reckless disregard of the truth. This has been described as "actual malice." Cantrell v. Forest City Publishing Co., 419 U.S. 245, 95 S.Ct. 465, 42 L.Ed.2d 419 (1974).

Malice is implicit in an action for intentional infliction of emotional distress, which action permits not only punitive damages but also damages for mental suffering. Dowling v. Blue Cross of Florida, Inc., 338 So.2d 88 (Fla. 1st DCA 1976); Kirksey v. Jernigan, 45 So.2d 188 (Fla. 1950).