Ephraim **BRYKS**, Plaintiff,

v.

**CANADIAN BROADCASTING CORPO-RATION**, Noah Erenberg, Danielle Kee-fler, Heidi Graham, and Cable News Network, Inc., Defendants.

**No. 95 Civ. 1219 (MBM).**

United States District Court, S.D. New York.

June 12, 1996.

Gary S. Jacobson, Jacobson & Triggs, New York City, for Plaintiff.

Lawrence Byrne, Robert D. Sack, Jonathan Israel, Gibson, Dunn & Crutcher, New York City, for Defendants.

## OPINION AND ORDER

MUKASEY, District Judge.

Plaintiff Ephraim Bryks has sued Cable News Network, Inc. for defamation. Defendants move for summary judgment pursuant to Fed.R.Civ.P. 56. For the reasons that follow, the motion is granted.

### I.

The facts relevant to the present motion are as follows: On February 28, 1994, the Canadian Broadcasting Corporation ("CBC") aired a 30–minute investigative report on plaintiff's tenure as principal and teacher at the Herzlia–Adas–Yeshurun Torah Academy, an Orthodox Jewish school in Winnipeg, Manitoba, Canada. (Compl. ¶ 9) In the report, entitled "Unorthodox Conduct," CBC reporter Danielle Keefler examined allegations that plaintiff engaged in sexual misconduct with students at the Academy during the 1980's. (*Id.* ¶¶ 12–18) On the evening of March 1, 1994, CBC broadcast a one minute, 55 second-long follow-up report (hereafter the "Report") on the allegations. (Hopkinson Decl. ¶ 2)

CNN's International Desk, as a subscriber to CBC's syndicated news service, obtained a copy of the Report via satellite within a few hours of the initial CBC broadcast on the evening of March 1. The International Desk informed producers at CNN's Headline News Network ("HNN") that the Report was available for broadcast and provided a brief and apparently unrecorded description of the Report's contents. (Hyland Decl. ¶ 5) HNN, which broadcasts 48 separately-produced half-hour news programs each day and often uses reports prepared by outside news sources, requested and obtained a copy of the Report from the International Desk. (*Id.*)

Frank Hyland, the producer of the first 13–minute segment of the 1:30 a.m. HNN news program the next morning, decided to run the Report virtually unedited at approximately 1:40 a.m. (*Id.*) HNN altered the Report only by replacing CBC's short introduction with the following introduction read by HNN anchor David Goodnow: "Police in Canada are investigating charges a rabbi molested children at a Jewish school in Winnipeg. Danielle Keefler reports the suspect is still working with children." (*Id.* Ex. A)

Hyland has "no specific recollection" of the Report and does not recall "anyone at Headline News ever discussing whether there was any need to edit or verify the news item."

383

(*Id.* ¶¶ 3, 7) Hyland attests that he and other producers at CNN consider CBC a "consistent and reliable source" of news reports and "a reputable reporting agency." (*Id.* ¶ 8)

In an opinion reported at 906 F.Supp. 204 (S.D.N.Y.1995), familiarity with which is assumed for present purposes, I dismissed plaintiff's claims against CBC, Keefler, and two other CBC employees for lack of subject matter jurisdiction. CNN now moves for summary judgment pursuant to Fed.R.Civ.P. 56.

## II.

Subject matter jurisdiction here is premised on diversity of citizenship. 28 U.S.C. § 1332 (1994). Plaintiff is an American citizen and a resident of New York. (Compl. ¶ 3) CNN is a Georgia corporation that maintains its principal place of business in Georgia. (Compl. ¶ 8; Kohler Decl. ¶ 2) Plaintiff claims damages in excess of $50,000, exclusive of interest and costs. (Compl. ¶¶ 33, 39–40)

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

In a diversity case, a federal court applies the choice of law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941). In tort actions, New York courts apply the substantive law "of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation." *Schultz v. Boy Scouts of America, Inc.,* 65 N.Y.2d 189, 196, 491 N.Y.S.2d 90, 94, 480 N.E.2d 679, 683 (1985) (quoting *Babcock v. Jackson,* 12 N.Y.2d 473, 481, 240 N.Y.S.2d 743, 749, 191 N.E.2d 279, 283 (1963)). In defamation cases, the jurisdiction of the plaintiff's domicile at the time of the alleged defamation usually has the greatest interest in the outcome of the litigation. *Reeves v. American*

*Broadcasting Cos.,* 719 F.2d 602, 605 (2d Cir.1983); *Merrill Lynch Futures, Inc. v. Miller,* 686 F.Supp. 1033, 1041 (S.D.N.Y. 1988); *Zerman v. Sullivan & Cromwell,* 677 F.Supp. 1316, 1318 (S.D.N.Y.1988); *Davis v. Costa–Gavras,* 580 F.Supp. 1082, 1091 (S.D.N.Y.1984); Restatement (Second) of Conflict of Laws § 150(2) (1971). That jurisdiction is the place where any injury is most likely to be felt, and accordingly the jurisdiction that will have the greatest interest in having its laws control the consequences of that injury. At the time of HNN's broadcast of the Report, plaintiff was domiciled and employed in Queens, New York. (Compl. ¶¶ 3, 29) Plaintiff alleges as injury resulting from the broadcast, *inter alia,* his termination as principal and teacher at a Queens, New York Torah academy. (Compl. ¶¶ 29–30) Because neither party has suggested that any other jurisdiction has a greater interest in the outcome of this lawsuit, New York law will be applied here.

## III.

Plaintiff is a private figure, but allegations of sexual assault by a community religious leader on school-children surely are "of legitimate public interest and concern." *See Gaeta v. New York News, Inc.,* 62 N.Y.2d 340, 350, 477 N.Y.S.2d 82, 85, 465 N.E.2d 802, 805 (1984) (courts generally defer to the judgment of editors in deciding which matters are newsworthy and warrant public exposition). Accordingly, plaintiff must establish that CNN acted in a "grossly irresponsible manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties." *Chapadeau v. Utica Observer–Dispatch,* 38 N.Y.2d 196, 199, 379 N.Y.S.2d 61, 64, 341 N.E.2d 569, 571 (1975). As a republisher, CNN is entitled under New York law "to place its reliance upon the research of the original publisher absent a showing that [CNN] 'had, or should have had, substantial reasons to question the accuracy of the articles or the *bona fides* of [the] reporter.'" *Karaduman v. Newsday, Inc.,* 51 N.Y.2d 531, 550, 435 N.Y.S.2d 556, 565–66, 416 N.E.2d 557, 566 (1980) (quoting *Rinaldi v. Holt, Rinehart & Winston,* 42 N.Y.2d 369,

383, 397 N.Y.S.2d 943, 952, 366 N.E.2d 1299, 1307–08 (1977)).

At least two New York courts have applied those standards to the republication of news items disseminated by a news service. In *Zetes v. Richman*, 86 A.D.2d 746, 447 N.Y.S.2d 778 (4th Dep't 1982), a manufacturer of commemorative coins sued a small newspaper that published a story suggesting that the coins were of poor quality. The newspaper had obtained the story from the United Press International ("UPI") wire service. The Court ordered the complaint dismissed for failure to state a claim upon which relief could be granted, because the editor responsible for the republication "had no reason to doubt the truthfulness of the article, and ... did not know the plaintiff or bear him any ill-will." 86 A.D.2d at 746, 447 N.Y.S.2d at 779.

In *Rust Communications Group, Inc. v. 70 State Street Travel Serv., Ltd.*, 122 A.D.2d 584, 504 N.Y.S.2d 927 (4th Dep't 1986), a travel agent and her husband sued a radio station that reported that the couple was wanted by police in several states for cheating customers. The news item originally had appeared in a local newspaper and on the UPI wire service. The Court ordered summary judgment for the radio station because officials at the station had neither knowledge of the news story's falsity nor substantial reasons to doubt the accuracy of the story. 122 A.D.2d at 585, 504 N.Y.S.2d at 927–28.

### IV.

■ Plaintiff contends that CNN failed "to take any step whatsoever to verify the story it received from CBC prior to republishing it." (Pl.Mem. at 2) However, a failure to investigate can give rise to liability only if an investigation would have raised concerns about the general reliability of CBC as a news source or the specific reliability of the Bryks story.

#### A. *CBC's Reliability as a News Source*

■ Plaintiff cites the assertion of three other legal claims against CBC as evidence of the general unreliability of CBC reporting. First, in February 1982, a Canadian judge awarded $125,000 in damages to a deputy attorney-general for the province of British Columbia who had been libeled by a CBC news report broadcast in 1980. The CBC report suggested that the plaintiff had attempted to block prosecutions against a drunk driver and a prostitute. The Court criticized the CBC report as "entertainment presented in the guise of news" and commented:

> This is not the first, although it is the most serious, case disclosing what may be a tendency on the part of CBC in some of its programs to proclaim its view of the truth with righteous zeal but scant regard for the facts and for the reputations of those of whose conduct it disapproves.

(Jacobson Aff.Ex. A at 19) After the suit, a CBC spokesman vowed to improve procedures for verifying stories. (*Id.* at 20)

Second, in 1983, a Newfoundland provincial government cabinet minister sued CBC for libel for reporting that he intentionally set a fire that destroyed his apartment. The cabinet minister turned down a $50,000 settlement offer and the case went to trial in January 1983. (*Id.* Ex. B at 15) Plaintiff has provided no information as to the outcome of that litigation.

Third, in 1994, a witness to a murder sued CBC for invasion of privacy for identifying her by name in a report on the murder. (*Id.* Ex. D at 39) Plaintiff has provided no information as to the outcome of that lawsuit.

As further evidence of CBC's unreliability, plaintiff offers a 1989 magazine article reporting that "severe budget cuts ... have plunged [CBC] into the worst crisis of its 52–year history and dropped morale to an all-time low." (*Id.* Ex. C at 24) Plaintiff also has provided a 1994 newspaper article reporting budget problems at CBC. (*Id.* Ex. E)

The evidence cited by plaintiff proves little. Plaintiff has demonstrated only that CBC lost a single libel suit 12 years before its broadcast of the Bryks story, based on a report that aired 14 years before that Bryks story. The 1983 suit proves only that CBC was again sued for libel the following year; there is no evidence that the plaintiff in the 1983 suit ever recovered anything. The 1994

litigation involved a claim for invasion of privacy, not libel; that plaintiff did not challenge the factual accuracy of the report.

It is not unusual for a major news agency to be named as a defendant in a lawsuit. If anything, CBC's litigation track record, as suggested by plaintiff's submissions, of three lawsuits and one known damage award for libel over twelve years is fairly good; many major news agencies are sued more often. *See* Russell L. Weaver & Geoffrey Bennett, *Is the New York Times "Actual Malice" Standard Really Necessary? A Comparative Perspective,* 53 La.L.Rev. 1153, 1183 (1993).

A budget shortage conceivably could have adversely affected the quality of CBC reporting in various ways. However, there is no evidence that fiscal concerns prompted the CBC to relax its standards for fair and accurate reporting. Budget problems, alone, do not render news agencies presumptively disreputable.

There is no evidence that CBC is anything but a long-established, reputable news agency upon which other news agencies reasonably may rely for news items. *See generally* James E. Boasberg, *With Malice Toward None: A New Look at Defamatory Republication and Neutral Reportage,* 13 Hastings Comm. & Ent.L.J. 455, 457–64 (1991) (discussing the origin and evolution of the "wire service" defense). As plaintiff pointed out in opposing CBC's dismissal motion, CBC enjoys editorial independence from Canadian political authorities and reports in "an independent, objective and critical manner." (Thomas Aff.Ex. B at 10) Plaintiff has not established that CNN had any reason to doubt the accuracy of CBC reporting.

## B.  *The Reliability of the Bryks Report*

█ Plaintiff also argues that the Report itself contained several "red flags" that should have alerted CNN to the need for independent verification of the allegations. Plaintiff asserts that the Report was inherently suspicious because of the sensational nature of the subject matter, the anonymity of some of the alleged victims, and the reliance by one alleged victim on "'recovered memories,' as described by a purported therapist." (Pl.Mem. at 8–10)

The indicia plaintiff identifies as "red flags" did not give CNN reason to question the accuracy of the Report. First, the fact that the Report addressed sexual misconduct did not render the Report inherently incredible because "[a]llegations of wrongdoing are published nearly every day and involve people worldwide." *O'Brien v. Williamson Daily News,* 735 F.Supp. 218, 225 (E.D.Ky.1990) ("plaintiff has offered no authority which holds that the mention of sexual misconduct should automatically require an independent investigation by every newspaper which wishes to publish a story transmitted via [a reputable wire service]"), *aff'd without reported opinion,* 931 F.2d 893, 1991 WL 66682 (6th Cir.1991).

Similarly, the anonymity of some of the victims interviewed for the Report was not unusual. Parents of sexual abuse victims who make public allegations often insist on anonymity to protect their children from further trauma. In many states, the anonymity of child sexual assault victims is guaranteed by statute. *See generally* Charles R. Petrof, Note, *Protecting the Anonymity of Child Sexual Assault Victims,* 40 Wayne L.Rev. 1677 (1994) (arguing that states have a compelling interest in preserving the anonymity of children who come forward with allegations of sexual abuse).

Finally, the revelation that one alleged victim used "recovered memories" could not have aroused any concern at CNN because that information was not included in the Report received and broadcast by CNN. The use of "recovered memories" was revealed only in the 30–minute program broadcast by CBC. Plaintiff points out that the shorter Report broadcast by CNN made reference to the longer report, but that alone did not suggest any irregularity in the shorter report.

\*       \*       \*

Plaintiff has offered no evidence tending to prove either that CBC was generally unreliable as a source of news or that anything in the Bryks Report gave CNN substantial reasons to question its accuracy. Because the evidence plaintiff has offered, even if credit-

ed, is insufficient to prove "gross irresponsibility" on the part of CNN as republisher, defendant's motion for summary judgment is granted. The complaint is dismissed.

SO ORDERED: