**LA LUNA ENTERPRISES,
INC., Plaintiff,**

v.

**CBS CORP., CBS Broadcasting, Inc.,
Dan Rather, and James Stewart,
Defendants.**

No. 98 Civ. 5852(RLC).

United States District Court,
S.D. New York.

Oct. 20, 1999.

---

Law Offices of Kenneth T. Wasserman, New York City, for Plaintiff; Kenneth T. Wasserman of counsel.

CBS Law Department, New York City, for Defendants; Susanna M. Lowy, Cameron A. Stracher of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

Plaintiff La Luna Enterprises, Inc., ("La Luna" or the "corporation") asserts a claim of defamation against defendants CBS Corporation, CBS Broadcasting Inc., ("CBS"), Dan Rather, and James Stewart arising out of a televised report on the "CBS Evening News with Dan Rather" (the "broadcast") concerning Russian organized crime and containing interior footage of plaintiff's restaurant and nightclub. Plaintiff also asserts claims of fraud and trespass arising out of defendants' procurement of its permission to film its restaurant. Defendants now move to dismiss plaintiff's amended complaint (the "complaint") pursuant to Rule 12(b)(6), F.R.Civ. P., for failure to state a claim upon which relief can be granted.

## BACKGROUND

In September, 1997, CBS contacted La Luna to request permission to film its cabaret show for background footage for a broadcast about tourism in Miami Beach. (Cplt.¶¶ 12–13.) Plaintiff, relying on this representation, permitted CBS to film its show. Contrary to plaintiff's expectations, on October 29, 1997, CBS featured the footage of plaintiff's restaurant in a broadcast graphically depicting the violent threat posed by the new Russian mob in

America and, in particular, in Miami. (Cplt.¶¶ 16–17.) The broadcast began with footage of La Luna and, in a voiceover narration, CBS correspondent Stewart stated:

> Inside, you'd swear this was Russia. Everything from the food to the music says Moscow, but one look outside [visual of Miami Beach scene] and you know its not. This is Miami Beach, and the Russians aren't just coming anymore, they're already here. [return to visual of La Luna] But just who, wonders American law enforcement lately, are these people? Are they hard working immigrants or are they from Russia's violent underworld, [visual of individuals covered in blood on a Russian street], the criminal side of immigration that's turned the old Soviet Union into a war zone . . . .

(Defs.' Exh. 1.)[1] The broadcast then discussed how elements of Russian organized crime were moving into America. It included interviews with a former KGB agent and an FBI special agent who discussed their efforts to track down Russian mobsters in the United States. The broadcast finished with more footage of La Luna and a final visual of a filled body bag lying on a sidewalk in Russia, near a pool of blood.

The complaint alleges that contrary to defendants' implication, law enforcement officials had no reason to believe that La Luna's employees and patrons were part of Russia's violent underworld. (Cplt.¶ 18.) It also alleges that, by reason of defendants' implication that La Luna itself was involved with organized crime, (Cplt.¶ 29), plaintiff has suffered injury to its reputation and a downturn in its business. (Cplt.¶ 34.) Plaintiff filed its complaint on August 17, 1998, seeking damages of $1,000,000 on each of its three claims of defamation, fraud and trespass.

## DISCUSSION

The court may dismiss plaintiff's complaint pursuant to Rule 12(b)(6) only if it " 'appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Cooper v. Parsky,* 140 F.3d 433, 440 (2d Cir.1998) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In ruling on defendants' motion, the court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of plaintiff. *See Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996).

### I. Choice of Law

■■■ As a threshold matter, the parties dispute the law applicable to plaintiff's claims. Since jurisdiction is based on diversity of citizenship, 28 U.S.C. § 1332 (1999), the court must apply the choice of law rules of the forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496–97, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Lee v. Bankers Trust Co.,* 166 F.3d 540, 545 (2d Cir.1999). New York's choice of law rules require the court to apply the substantive tort law of the state "with the most significant interest in the litigation." *Lee,* 166 F.3d at 545 (citing *Padula v. Lilarn Properties Corp.,* 84 N.Y.2d 519, 521, 620 N.Y.S.2d 310, 644 N.E.2d 1001 (1994)).

■■■ In defamation cases, "the state of the plaintiff's domicile will usually have the most significant relationship to the case," assuming that the defamation was published in the plaintiff's state, because plaintiff's home state is where a plaintiff's reputation is most likely damaged. *Id.* (quoting *Reeves v. American Broad. Co., Inc.,* 719 F.2d 602, 605 (2d Cir.1983)). *See*

---

1. On a motion to dismiss, the court may "consider documents attached to or incorporated by reference in the complaint." *Cooper v. Parsky,* 140 F.3d 433, 440 (2d Cir.1998) (internal citations omitted). The complaint incorporates portions of the broadcast, (Cplt.*passim*), and the court considers the broadcast, a copy of which is attached as Exhibit 1 to the Certification of Cameron Stracher, in making its determination.

also, *Bryks v. Canadian Broad. Corp.*, 928 F.Supp. 381, 383 (S.D.N.Y.1996) (Mukasey, J.) (collecting cases); Restatement (Second) of Conflict of Laws § 150(3) (1971) ("[T]he state of most significant relationship will usually be the state where the corporation ... had its principal place of business...."). "Although the preference for the plaintiff's domicile is not conclusive, the significant contacts [in a defamation case] are, almost exclusively, the parties' domiciles and the locus of the tort." *Lee*, 166 F.3d at 545 (quotations and citations omitted).

▮ Although New York has some interest in this litigation because defendants are citizens of New York, and New York is plaintiff's chosen forum, Florida has a more significant interest because plaintiff's principal place of business is in Florida; plaintiff is incorporated in Florida; plaintiff alleges it suffered injury to its reputation in Florida;[2] and lastly CBS filmed footage of plaintiff's establishment, and broadcast its report, in Florida. Although CBS correctly notes that New York has an interest in protecting the free speech rights of publishers within its borders, the Second Circuit, when confronted with a similar claim of defamation against a New York based television broadcaster, affirmed the application of the defamation law of the plaintiff's home state, New Jersey. *Machleder v. Diaz*, 801 F.2d 46, 52 (2d Cir.1986) ("[D]espite the interest of New York in establishing a standard of fault for its news media, New Jersey also has an important competing interest in protecting its citizens from defamation .... [and] governing the fault of those who come within its boundaries to investigate the news and later broadcast it there."). Since Florida has the most sig-

nificant interest in this litigation, Florida law must apply to plaintiff's defamation claim. *See Reeves*, 719 F.2d at 605 (affirming application of law of plaintiff's home state in multistate defamation case).[3]

▮ The principle of *decepage* requires that the court independently determine which state's substantive law applies to plaintiff's claims of fraud and trespass. In the context of such conduct-regulating torts, New York's choice of law principles require that the law of the place of the wrong governs. *See Sheldon v. PHH Corp.*, 135 F.3d 848, 853 (2d Cir.1998) (citation omitted). The complaint is ambiguous as to precisely where defendants' allegedly fraudulent conduct took place—it simply states that "defendants ... contacted plaintiff and requested permission to film" plaintiff's restaurant. (Cplt.¶ 12.) Nevertheless, "when the defendant's [tortious] conduct occurs in one jurisdiction and the plaintiff's injuries are suffered in another, the place of the wrong ... is determined by where the plaintiffs' injuries occurred." *Schultz v. Boy Scouts of Am.*, 65 N.Y.2d 189, 195, 491 N.Y.S.2d 90, 480 N.E.2d 679 (1985); *see also Rosenberg v. Pillsbury Co.*, 718 F.Supp. 1146, 1150 (S.D.N.Y.1989) (Conner, J.) ("The locus of a fraud is 'the place where the injury was inflicted,' as opposed to the place where the fraudulent act originated."). Since plaintiff's alleged injury occurred in Florida, Florida's law applies to the fraud claim. Florida law also applies to plaintiff's trespass claim because defendants' agent allegedly trespassed upon plaintiff's property in Florida.

## II. Defamation

▮ In order to state a claim for defamation "against a media defendant ... 'a private person must allege publication

---

**2.** The locus of a tort is generally determined by the place where the plaintiff suffered injury. *See Schultz v. Boy Scouts of Am.*, 65 N.Y.2d 189, 195, 491 N.Y.S.2d 90, 480 N.E.2d 679 (1985).

**3.** Although some courts in this Circuit have applied a nine-factor test to decide choice of

law questions in multistate defamation actions, see, e.g., *Davis v. Costa–Gavras*, 580 F.Supp. 1082, 1091 (S.D.N.Y.1984) (Sofaer, J.), the New York Court of Appeals has not adopted this test, see *Lee*, 166 F.3d at 545–46. Nevertheless, the court's analysis would lead to the same result under such a test.

(1) of false and defamatory statements of and concerning that private person, (2) without reasonable care as to the truth or falsity of those statements, (3) resulting in actual damage to that private person.'" *Thomas v. Jacksonville Television, Inc.*, 699 So.2d 800, 804 (Fla.Dist.Ct.App.1997) (citation omitted). It is well settled that a corporation may sue for defamation where its reputation is "injured by a false publication of defamatory matter, which prejudices its trade or business, or deters third persons from dealing with it." *St. Paul Fire & Marine Ins. Co. v. Naples Community Hosp.*, 585 So.2d 374, 376 (Fla.Dist.Ct.App.1991).

■ CBS asserts that plaintiff's defamation claim should be dismissed because its broadcast was not "of and concerning" La Luna and, even if it were, it did not defame La Luna. Defendants' main argument is that the broadcast neither mentioned La Luna by name nor identified it in writing. Defendants note that the broadcast only identified a group of Russian immigrants as the focus of American law enforcement officials' scrutiny. They contend that even if the broadcast could reasonably be interpreted as imputing criminal activity to the La Luna employees and patrons depicted on screen, the broadcast nevertheless cannot be interpreted as imputing criminal activity to the restaurant and nightclub itself.

■ The required analysis for both the "of and concerning" and the defamatory meaning clauses in the first element of a defamation claim are functionally similar. Both analyses require the court to determine whether the broadcast may be reasonably susceptible of an interpretation that it 1) was "of and concerning" plaintiff, and 2) had a defamatory meaning. The "of and concerning" requirement, although it is "generally a question of fact for the jury, ... can be decided as a matter of law

where the statements 'are incapable of supporting a jury's finding that the allegedly libelous statements refer to a plaintiff.'" *Anyanwu v. Columbia Broadcasting System, Inc.*, 887 F.Supp. 690, 692 (S.D.N.Y.1995) (Sweet, J.) (citation omitted). *See also Thomas*, 699 So.2d at 805 (affirming dismissal of group defamation claim and quoting *Anyanwu*); *McIver v. Tallahassee Democrat, Inc.*, 489 So.2d 793, 794 (Fla.Dist.Ct.App.1986) (affirming summary judgment against plaintiff where no reasonable interpretation that publication was libelous of plaintiff). The requirement that a statement be reasonably capable of a defamatory interpretation must be evaluated by the court "in the first instance, prior to the jury's evaluation of whether the statement was in fact understood as defamatory." *Silvester v. American Broadcasting Co.*, 650 F.Supp. 766, 770 (S.D.Fla.1986). "[W]here a publication is susceptible of two reasonable interpretations, one of which is defamatory, the issue of whether the publication was defamatory becomes one of fact and must be submitted to a jury...." *Miami Herald Publishing Co. v. Ane*, 423 So.2d 376, 389 (Fla.Dist.Ct.App.1983).

■ The court agrees that defendants' interpretation of the broadcast as neither referring to plaintiff and, consequently, not defaming plaintiff, is a reasonable one. However, the court also finds that a reasonable jury could interpret the broadcast, when both viewed in its entirety[4] and "construed as the common mind would naturally understand it," *McIver*, 489 So.2d at 794, as leaving a viewer with the opposite impression that law enforcement officials are suspicious of both Russian immigrants and Russian businesses, including the Russian restaurant and nightclub featured in the broadcast.

---

4. The court must consider the alleged defamatory publication in its entirety and consider that "[w]hen words and pictures are presented together, each is an important element of what, in toto, constitutes the publication." *Brown v. Tallahassee Democrat, Inc.*, 440 So.2d 588, 589–90 (Fla.Dist.Ct.App.1983) (citation omitted).

■ As a matter of law, a "defamed person need not be named in the defamatory words if the communication as a whole contains sufficient facts or references from which the injured person may be determined by the persons receiving the communication." *Wolfson v. Kirk*, 273 So.2d 774, 779 (Fla.Dist.Ct.App.1973). Here the broadcast seems amenable to such an interpretation. The court notes that CBS alleged that law enforcement officials were questioning the activities of Russian immigrants while it simultaneously ran footage of plaintiff's Russian restaurant. A reasonable jury could conclude this cloaked the restaurant as well as its employees in a veil of suspicion. Also, CBS's broadcast repeatedly referred not only to allegations of criminality against Russian immigrants, but against the business activities and enterprises allegedly run by Russian organized crime in America.[5] Given the substantial evidence that a reasonable jury could find the broadcast "of and concerning" La Luna, and that it cast La Luna in a defamatory light, the court will not dismiss the defamation claim.

The court recognizes that this is a close call; however, the Fifth Circuit, in *Church of Scientology of California v. Cazares*, 638 F.2d 1272 (5th Cir. Mar.1981), instructed courts that "any doubt as to the defamatory effect of [a] publication should be resolved by the common mind of the jury, and not even by the most carefully considered judicial pronouncement." *Id.* at 1286 (citation omitted) (applying Florida law). This advisory, when coupled with the 12(b)(6) standard granting plaintiff's complaint all reasonable and favorable inferences, compels rejection of defendants' argument that the broadcast cannot be susceptible of a reasonable interpretation

by a jury as "of and concerning" La Luna, or as defaming La Luna.

■ Defendants separately assert that plaintiff's claim should be dismissed because the allegations in plaintiff's complaint are deficient; they fail to actually allege that La Luna, as opposed to its employees and patrons, was defamed. The court agrees that plaintiff's complaint and memorandum focus on the allegation that the broadcast "leaves the viewer with the reasonable but wrongful and defamatory interpretation that La Luna employees and patrons are part of Russian organized crime." (Cplt.¶ 24.) The court recognizes that defamatory statements about a corporation's employees generally do not give rise to a cause of action in the corporation. *See Church of Scientology of California v. Flynn*, 578 F.Supp. 266, 268–69 (D.Mass. 1984) (applying Florida law and holding that nonprofit corporation may not sue where only its identified members were allegedly defamed); *McIver*, 489 So.2d at 794 (holding that corporation may not sue where publication allegedly implied its president committed bribery but did not imply corporation was involved in wrongdoing); W. Page Keeton et. al., Prosser and Keeton on The Law of Torts § 111, at 781 (5th ed. 1984) ("An organization is not defamed by words directed at its officers, stockholders or employees ... unless the words are such, in the light of the connection between them, as to defame both.").

Nevertheless, ¶ 29 of the complaint sufficiently alleges that the broadcast separately defamed La Luna. Paragraph 29 states: "At the time of the broadcast, the defendants knew or should have known that such broadcast directly implied plaintiff and would lead a reasonable person to

5. For example, defendant Rather stated: "the old line Cosa Nostra has fallen on hard times, with law enforcement busting its leaders and busting up their businesses, but that does not mean the end of organized crime.... [A] new [Russian] mob is moving in...." (Defs'.Exh. 1.) The broadcast stated elsewhere: Florida has established a task force to

"keep up with [mob] organizations"; these sophisticated mob organizations are involved in more than just "street crime," they are operating businesses such as banks and buying "condos and that sort of thing"; and already one "Russian owner of a Miami strip club" was discovered peddling arms to drug lords. (*Id.*)

believe that the broadcast was referring to plaintiff, portraying plaintiff's employees, musicians, dancers and patrons as members of 'Russia's violent underworld.' "

For all of the aforementioned reasons, the court denies defendants' motion to dismiss plaintiff's defamation claim.

## III. Fraud

■ The elements of a fraud claim under Florida law are: "a false statement concerning a material fact; the representor's knowledge that the representation is false; an intention that the representation induce another to act on it; and consequent injury by the party acting in reliance on the representation." 27 Fla. Jur.2d *Fraud and Deceit* § 7 (1999).

■ It is well established that the media "has no special privilege to invade the rights and liberties of others," and that "generally applicable laws do not offend the First Amendment simply because their enforcement against the press has incidental effects on [the press's] ability to gather and report news." *Cohen v. Cowles Media Co.*, 501 U.S. 663, 669–70, 111 S.Ct. 2513, 115 L.Ed.2d 586 (1991) (quotations and citation omitted). Nevertheless, where a plaintiff brings a tort claim other than defamation to impose liability on the press for the publication of allegedly false and harmful statements, these claims may be subject to the strictures of the First Amendment. *See Hustler Magazine v. Falwell*, 485 U.S. 46, 56, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988) (holding public figure may not recover for intentional infliction of emotional distress by reason of offensive parody without additionally meeting the constitutional requirement that parody made false statement of fact with actual malice). This particularly holds true where tort claims threaten to hinder "the free flow of ideas and opinions on matters of public interest and concern," including by restricting what the press may publish. *Id.* at 50–51, 108 S.Ct. 876.

■ Although the court is troubled by plaintiff's allegations of defendants' fraudulent behavior in obtaining permission to film La Luna, plaintiff's claim for fraud nevertheless must fail because it impermissibly threatens "to punish the expression of [even] truthful information or opinion." *Cohen*, 501 U.S. at 675–76, 111 S.Ct. 2513 (Blackmun, J. dissenting). Plaintiff's complaint alleges damages of no less than $1,000,000 for injury to plaintiff's reputation allegedly caused by defendants' fraudulent conduct. (Cplt.¶ 39.) If allowed to proceed on this claim, plaintiff could succeed regardless of its defamation claim and the truth or falsity of the broadcast. Such a result threatens to circumvent the constitutional requirement that a media defendant may not be held liable to a private figure for reputational injury caused by publication of defamatory statements that are true and at least not negligently reported. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 347, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974).

The court's dismissal of plaintiff's fraud claim on this ground is not inconsistent with *Cohen*, which established that a plaintiff may recover damages under a theory of promissory estoppel when a newspaper does not honor promises made to obtain information from a plaintiff. *Cohen*, 501 U.S. at 671, 111 S.Ct. 2513. The United States Supreme Court distinguished *Cohen* from cases like the instant case, where a plaintiff attempts to use different tort claims "to avoid the strict requirements for establishing a libel or defamation claim," or to seek "damages for injury to his reputation." *Id.* In *Cohen*, the Supreme Court held that the plaintiff was not attempting to bring a defamation claim through another tort vehicle; however, in this case, plaintiff's fraud claim is based on the same alleged injury to his reputation as his defamation claim. Defendants' motion to dismiss the fraud claim is therefore granted.

## IV. Trespass

■ "A trespass on realty is defined as an injury to, or a use of the land

of another by one who has no right or authority." 55 Fla. Jur.2d *Trespass* § 4 (1999). Merely entering land without having the right or the authority to do so constitutes a trespass. *Guin v. City of Riviera Beach,* 388 So.2d 604, 606 (Fla. Dist.Ct.App.1980). Damages for trespass are based on injury to plaintiff's rights in the possession and use of his property, but nominal damages may be awarded where the trespass caused no actual damages. 55 Fla. Jur.2d *Trespass* § 16.

 Plaintiff's complaint alleges that defendants' agent entered its premises wrongfully and without legal right. (Cplt.¶ 42.) As a result, plaintiff alleges damages no less than $1,000,000. (Cplt.¶ 45.) Plaintiff, however, fails to allege that defendants interfered in any way with its use or possession of its property. Insofar as plaintiff's claim for damages for trespass relies, then, on alleged injury to its reputation from defendants' broadcast, it must fail for the same reasons as its fraud claim. However, plaintiff's memorandum indicates that plaintiff also argues for nominal damages. Florida law entitles plaintiff to sue for nominal damages and, for this reason, defendants' motion to dismiss the trespass claim is denied.

## CONCLUSION

For the reasons stated above, defendants' motion to dismiss with prejudice is granted as to plaintiff's claim for fraud, and denied as to plaintiff's claims for defamation and trespass.

IT IS SO ORDERED.